## UNITED STATE DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

### - SOUTHERN DIVISION -

**Michelle McCann,**

            Plaintiff,            Case No.

v.

                                Honorable:
                                Magistrate Judge:

**Todd Woodcox,**

            Defendant.        **Nature of Case:**
                                42 U.S.C.§1983 U.S.C.A. 4 & 14
                                Excessive Force / Deliberate Indifference to
                                Serious Medical Needs, and
                                  State Law - Gross Negligence

_____ /

The F. L. Gibson Group PC
Fred L. Gibson P39530
Co-Counsel for Plaintiff
17001 19 Mile Road, Ste 1C
Clinton Twp MI 48038-4867
586.416.2520 / 586.464.1629 [fx]
attorneyfgibson@gmail.com

_____ /

There is no other pending or resolved civil action arising out of the
transaction or occurrence alleged in the complaint.

           ___s/ Fred L. Gibson___
              Fred L. Gibson P39530

## <u>COMPLAINT</u>

and

## <u>JURY DEMAND</u>

Plaintiff states:

## NATURE OF CASE

1.  Plaintiff, Michelle McCann, asserts a 42 U.S.C. §1983 claim for Excessive Force in violation of U.S.C.A. 4 and a State Law claim for Gross Negligence, against defendant Todd Woodcox, a City of Saint Clair Shores police officer, for the serious and grievous injuries incurred and damages sustained by the Plaintiff as a direct and proximate result of acts and omissions attributable to defendant.

## JURISDICTION AND VENUE

2.  Jurisdiction is vested in the United States District Court pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343 and 28 U.S.C. §1367.

3.  Venue is appropriate in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. §1391.  Further, the events that gave rise to this lawsuit occurred in the City of Saint Clair Shores, County of Macomb, Michigan.

## PARTIES

4.  Plaintiff, Michelle McCann ['McCann'], is a resident of the County of Macomb State of Michigan.

5.  Defendant, Todd Woodcox ['Woodcox'], is a resident of the State of Michigan. Upon information and belief Woodcox is a resident of the County of Macomb.

6.  At all times relevant and material to this case Woodcox:

    a.  Was, and on information and belief continues to be, employed by the City of Saint Clair Shores as a police officer in its police department;

    b.  Was on-duty and working in his individual capacity as a sworn police officer on behalf of the City of Saint Clair Shores;

    c.  Was acting under color of law (42 U.S.C. §1983);

2

    d.      Was charged with the duty and obligation to execute his lawful, statutory duties within the parameters set forth by the constitution and laws of the State of Michigan and of the United States and was not to subject a private citizen, or cause a private citizen to be subjected to the deprivation of any rights, privileges or immunities secured by the Constitution and/or laws of the State of Michigan and/or of the United States.

7.    Woodcox is being sued in his individual capacity.


## STATEMENT OF FACTS

8.    The incident that is the basis of this lawsuit against Woodcox occurred on and after August 3, 2012, while McCann was being held in the detention cells of the City of Saint Clair Shores police department.

**Background**

9.    On August 3 at approximately 10:15 PM two officers from the City of Saint Clair Shores police department were dispatched to a residence in their City in response to a call from McCann, who reported she had been assaulted by an ex-boyfriend who she was in the process of evicting from her home.

10.    During an interview by the officers both McCann and the ex-boyfriend accused each other of being abusive. However, as only the male evidenced any sign of assaultive behavior, being a small scratch and some redness on his face, the officers arrested McCann on the charge of domestic violence.

11.    The officers also subsequently arrested the ex-boyfriend as he had an outstanding warrant for domestic violence - 2nd offense, stemming from an incident involving McCann on July 29 in which McCann had reported being assaulted by the same ex-boyfriend.

12.    McCann and the ex-boyfriend were both handcuffed and taken to the Saint Clair Shores police department where each was placed in a holding cell, without incident.

3

13.     In their report the arresting officers reported that both McCann and the ex-boyfriend had been drinking and described McCann as being "very intoxicated".

14.     On information and belief, Woodcox was the officer in charge of the station, more specifically the detention area and the health, welfare, and safety of the prisoners that were imprisoned in its cells

**Incident in Cell**

15.     Without ascertaining her medical or mental health status or making any effort to determine her intoxication level McCann was initially placed in a cell that was void of any furniture, toilet, or any other items. The interior of the cell was actively monitored by a video with audio.

16.     Some time later, McCann, still handcuffed behind her back, was moved to a different detention cell.  That cell too was void of a toilet or working telephone but did contain three molded black plastic, hard edged, easily movable chairs. The interior of the cell was also being actively monitored by video with audio.

17.     It was evident even to a casual observer that McCann was 'very intoxicated' as reported by the arresting officer.

18.     An officer removed McCann's handcuffs and later assisted her in removing the jewelry she was wearing.

19.     After some time in the cell, McCann repeatedly asked to use the restroom which was reportedly in another area of the police building.  She was initially told she would not be taken out of her cell until she calmed down.  Her subsequent repeated requests were just ignored.

20.     After an hour or so in the cell, having apparently grown weary of listening to McCann's repeated pleas to use the bathroom and other colorful descriptive language about the officers, Woodcox opened the door and entered McCann's cell to talk to her.

21.     When it became evident to McCann that Woodcox had no intention of taking her to the restroom, as Woodcox started to pull the cell door closed McCann started to pull the door from the other side.

4

22.     Though she stood only 5' tall and weighed a mere 100 lbs, Woodcox, who towered over her, grabbed onto McCann's left upper arm and violently threw her backwards, as if she were a rag doll.

23.     McCann was forced backwards directly into one of the molded black plastic, hard-edged, chairs that was in the corner of the cell.

24.     Though it was immediately evident by the startled, shocked, pained look on McCann's face, as she grabbed her right side and slowly slid onto the cement floor, that she had sustained a serious injury, Woodcox simply closed the door to the cell and walked away.

25.     For the next fifteen to twenty minutes McCann could be seen laying on the cement floor in a fetal position, with intermittent attempts to get to her feet onto the chairs, only to grab her right side and slide back onto the floor into a fetal position.  Her obvious signs of severe injury and pain and repeated pleas for help were ignored by Woodcox.

26.     Finally, Woodcox reentered the cell and asked McCann what was wrong with her, left the cell, closed the door, and either called or directed another officer to call for an ambulance.

27.     After more time passed, Fire Department medical personnel arrived and entered McCann's cell.

28.     Despite her obvious pain and physical condition, Woodcox allowed and even seemed to encourage the Fire Department medical personnel to linger and verbally belittle McCann rather than render aid and immediately transport her to a medical facility.

29.     After more time passed the medical personnel finally transported McCann by ambulance to St. John's Oakland-Macomb Hospital, Macomb Center, in Warren.

30.     Medical tests and imaging soon confirmed that McCann had sustained serious bodily injuries.

31.     McCann was discharged from the hospital five days later, certain of the time in the intensive care unit.

## COUNT I: VIOLATION OF U.S.C.A. 4 - EXCESSIVE FORCE

32. The 4th Amendment protect individuals from the misuse of governmental power, particularly the use of excessive force.

33. The right of a nonviolent, compliant arrestee to be free from unnecessary pain and injury knowingly inflicted during an arrest and thereafter, was clearly established before August 3, 2012.

34. Woodcox knew, or should have known that McCann was possessed of the 4th Amendment right not to be subject to excessive force during the course of an arrest and subsequent detention

35. McCann neither wanted, nor invited, nor did she provoke Woodcox, or engage in any action that would have justified such malicious, brutal, wanton, and outright sadistic treatment by Woodcox.

36. At all times relevant and material to the facts of this case Woodcox was afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action.

37. The force utilized by Woodcox, as more fully described above, was objectively unreasonable in light of the facts and circumstances with which he was confronted

38. By and through the act(s) and/or omission(s) above described, Woodcx unnecessarily, willfully, wantonly, deliberately, brutally, maliciously, and sadistically, inflicted pain and injury on McCann.

39. That as a direct and proximate result of the wrongful and unlawful act(s) and/or omission(s) attributable to defendant Woodcox, as above described, plaintiff McCann suffered severe and grievous injuries, and damages, past, and future, including, by way of example, but not limitation, to:

   a.    Fractured ribs 9 through 11 on the right;

   b.    Nondisplaced fracture of the right spinous processes of L1-L3;

   c.    Right moderate hydropneumothorax.

   d.    Extreme physical pain and suffering;

6

e.      Extreme emotional distress, humiliation, mortification and embarrassment;

f.      Abrasions and contusions;

g.      Limitations in activities previously enjoyed and engaged in.

h.      Hospitalization and need for medical care;

i.      Taking of pain medications to assuage pain;

j.      other physical and emotional injuries and damages and consequences that are found to be related to the events of August 3, 2012 and thereafter that is the subject of this lawsuit, that develop or manifest themselves during the course of discovery and trial.

## COUNT II - VIOLATION OF U.S.C.A. 4 & 14
## - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS -

40.   Plaintiff McCann repeats and realleges each paragraph above as if fully set forth below.

41.   It would have been evident to even the most casual observer, and in particular to Woodcox, that McCann was experiencing extreme pain, had sustained a serious injury, and there existed the necessity for a doctor's attention.

42.   It was Woodcox's obligation to assure the health and welfare of individuals incarcerated in the police department's detention cells.

43.   Woodcox consciously disregarded the risk of harm to McCann by failing to immediately render aid or secure medical attention so urgently needed.  Instead Woodcox deemed it appropriate that McCann simply suffer the excruciating pain and breathing difficulties associated with the serious injuries she had sustained, which he had caused to be inflicted upon her.

44.   That as a direct and/or proximate result of the act(s) and omission(s) attributable to Woodcox, McCann suffered and continued to suffer excruciating pain and difficulty breathing for an unnecessary extended period of time.

7

45.     That as a direct and proximate result of the wrongful and unlawful act(s) and/or omission(s) attributable to defendant Woodcox, as above described, plaintiff McCann suffered those severe and grievous injuries as more fully described and set forth at Count 1 above.

## COUNT III - STATE LAW CLAIM - GROSS NEGLIGENCE

46.     Plaintiff McCann repeats and realleges each paragraph above as if fully set forth below.

47.     That on the date and time above referenced, Woodcox violated the law, the constitution and his sworn duty in that the act(s) and/or omission(s) attributable to him, as more fully described in the paragraphs above, was willful, wanton and/or undertaken with deliberate indifference, and/or with reckless disregard to McCann's federally protected rights.

48.     The act(s) and /or omission(s) attributable to Woodcox as more fully described above, constituted a willful disregard of safety measures and a similar disregard for substantial risks and was otherwise so reckless that it demonstrated a substantial lack of concern for whether an injury results or would result.

49.     That it was the act(s) and/or omission(s) attributable to Woodcox, as more fully described above, that was the most direct and/or proximate cause of the injuries and damages inflicted upon or otherwise sustained by McCann.

50.     That as a direct and proximate result of the wrongful and unlawful act(s) and/or omission(s) attributable to Woodcox, as above described, McCann suffered those severe and grievous injuries and damages as more fully set forth at the end of Count 1 above.

**Relief Requested**

Plaintiff Michelle McCann requests judgement enter against defendant Woodcox in whatever amount above $75,000.00 she is found to be entitled, to include all compensatory, special, exemplary and/or punitive damages allowed by statute, case law and court rule(s), as well as the costs of this litigation, interest and reasonable attorney fees.

Respectfully,

  S/ Fred L. Gibson
Fred L. Gibson P39530
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff Michelle McCann respectfully requests a Trial by Jury of the issues and claims set forth in this lawsuit.

Respectfully,

  S/ Fred L. Gibson
Fred L. Gibson P39530
Attorney for Plaintiff
17001 19 Mile Road, Ste 1C
Clinton Twp MI 48038-4867
586.416.2520
attorneyfgibson@gmail.com